JUSTICE GRAY,
dissenting.
¶55 I concur in the Court’s opinion on the first certified question from the United States District Court for the District of Montana, Billings Division. I respectfully dissent from that opinion on the second certified question, which is whether certain coverages can be stacked under the policy at issue in this case.
*330 ¶56 There is no dispute that the Farmers Alliance insurance policy specifically prohibited stacking: “THE STACKING OF UNDERINSURED MOTORIST COVERAGE IS PROHIBITED....” If stacking is allowed, it must be allowed on public policy grounds which override the provisions of the insurance policy. I agree with the Court that resolution of the second certified question hinges on whether the issue is governed by Bennett, in which stacking was imposed on public policy grounds, or by Chilberg, in which this Court held that public policy did not override the terms of the insurance policy prohibiting stacking. The Court relies on Bennett. For the following reasons, it is my view that Chilberg controls.
¶57 In Bennett, the plaintiff was a named insured under one of the two insurance policies sought to be stacked, and the spouse of the named insured under the other policy. In that case, as the Court points out, we recognized the public policy that “an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration.” Bennett, 261 Mont. at 389, 862 P.2d at 1148. We stated that “Montana citizens should have a reasonable expectation that when they purchase separate policies for underinsured motorist coverage, they will receive adequate compensation for losses caused by an underinsured motorist, up to the aggregate limits of the policies they have purchased.” Bennett, 261 Mont. at 390, 862 P.2d at 1149.
¶58 The plaintiff in Chilberg was injured when another vehicle hit the car in which he was a passenger. The driver of the at-fault vehicle was uninsured. The car in which Chilberg was a passenger was insured with Mid-Century Insurance, which also insured two other cars for the same owner. The owner paid separate premiums for each of the coverages provided in the three policies. Chilberg argued that the three policies should be stacked. This Court disagreed.
The public policy and rationale we restated in Bennett is not furthered by permitting Chilberg to stack the policies in the instant case. Chilberg was a passenger who neither had “reasonable expectations” of coverage under the policy nor did he qualify as an insured spouse or family member under more than one policy.
Chilberg, 273 Mont. at 418, 903 P.2d at 1380.
¶59 The same can be said in the present case. Leonard was a passenger who cannot plausibly be argued to have had “reasonable expectations” that coverages would be stacked under the vehicle owner’s insurance policy. I conclude that the “reasonable expectation” public *331 policy justification for stacking, which we applied in Bennett but rejected in Chilberg, does not apply here. Nor did Leonard qualify as an insured spouse or family member under more than one policy. Those bases for overriding the antistacking terms of the insurance policy have no support under these facts.
¶60 In Sayers, a 1981 case involving the stackability of uninsured coverage as to a stranger to the insurance policy, this Court stated:
Safeco contends only an insured who pays the premiums for the additional coverage should be allowed to stack, citing several other jurisdictions that have so held. We are not persuaded by the authority cited. The rule of Kemp and the authorities cited therein control. Sayers was an insured as defined by the policy. Under these facts there is no reason to distinguish between persons insured and policyholders who have actually paid premiums. The justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased. The benefits flow to all persons insured.
Sayers, 192 Mont. at 340, 628 P.2d at 662. As this Court noted in Holeman I, 278 Mont. at 277, 924 P.2d at 1317, Sayers is no longer good law. Unlike the present case, Sayers dealt with uninsured, rather than underinsured, motor vehicle coverage, and § 33-23-203, MCA, was amended in 1997 to specifically prohibit stacking of uninsured motor vehicle insurance. Thus, Sayers has been “overruled” statutorily. The Court states, however, that the rationale underlying Sayers remains logically sound. I disagree.
¶61 The premise of Sayers, that stacking was justified because it was paid for as “extra protection,” is faulty. The “extra protection” purchased for multiple vehicles was not for the purpose of stacking, but for the multiplicity of possible drivers and passengers who might occupy the vehicles insured. In Hampton v. Allstate Ins. Co. (Ariz. 1980), 616 P.2d 78, for example, the court reasoned that it was theoretically possible that at one given moment each of several insured vehicles could be operating and be in individual accidents with uninsured motorists; each operator would then have coverage under each policy, which was the risk insured against and for which the premium had been paid. I conclude that the Sayers rationale concerning extra protection purchased does not provide a justification for overriding the terms of the insurance contract and imposing stacking.
¶62 As to whether medical payments coverage can be stacked, the majority relies on the Ruckdaschel opinion in deciding that they can. *332 Again, I disagree. Ruckdaschel relied upon the Bennett rationale; as in Bennett, the plaintiff in Ruckdaschel was an insured who had purchased the policies under which claim was made. Under reasoning analogous to that discussed above, I conclude that public policy does not justify overriding the terms of an insurance policy to impose stacking of medical payment policy limits for a plaintiff who is a stranger to the insurance policy.
¶63 In answer to the second certified question, then, I conclude that the estate of Gary Lee Leonard is entitled to the limit of the uninsured/underinsured motorist coverage and medical payments coverage on the one particular vehicle that was involved in the accident on November 9,1991, based upon Leonard’s “occupancy” of that vehicle at the time the third-party tortfeasor struck and killed him. Therefore, I would answer the certified question “No.”